IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

In re:     *

**133 CHESAPEAKE ST., LLC,**     *     Case No. 14-20894-TJC
(Chapter 11)
Debtor.     *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### DEBTOR'S MOTION TO SELL REAL PROPERTY FREE AND CLEAR

133 Chesapeake St., LLC (the "Debtor"), moves for authority to sell certain real property of the estate free and clear of liens, claims, encumbrances and interests to JBN Realty Investment Inc. (the "Purchaser"), pursuant to a certain Purchase and Sale Agreement and, in support thereof, states:

### JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Venue for the Debtor's chapter 11 case and this application is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (N), and (O).

2. The statutory basis for the relief requested herein are Bankruptcy Code §§ 105(a) and 363, as supplemented by Fed. R. Bankr. P. 2002, 6004, and 9014 and Local Bankruptcy Rules 2002-1 and 6004-1.

### BACKGROUND

3. On July 9, 2014, the Debtor filed a Voluntary Petition pursuant to Chapter 11 of the Bankruptcy Code (the "Petition Date").

4. The Debtor is a limited liability company that is owned 100% by Vincent L. Abell, who is the debtor in Case No. 13-13847-PM. Mr. Abell's bankruptcy case is pending simultaneously

and is a related case to this case. Roger Schlossberg was appointed as Mr. Abell's Chapter 11 Trustee on September 19, 2013 (the "Trustee"). By virtue of being Mr. Abell's trustee, the Trustee has stepped into Mr. Abell's shoes and acts as the 100% owner of 133 Chesapeake St., LLC.

5. The Debtor owns an improved parcel of real property located in the District of Columbia and commonly known as 6328 Eastern Avenue, NE, Washington DC 20011 (the "Property").

6. The Debtor sought and was granted the authority to employ A&G Realty Partners, LLC ("A&G") to market the Property for sale [Dkt. 32].

7. As of the Petition Date, there were two (2) purported tenants (the "Tenants") of the Property, both with expired leases. On September 30, 2014, the Debtor filed a Motion for Authorization to Reject Non-Residential Real Property Leases [Dkt. 28]. Thereafter, the Court conducted a hearing on the Motion to Reject and, on January 27, 2015, entered an Order rejecting the leases [Dkt. 58].

8. A&G has actively marketed the Property on behalf of the Debtor. After receiving and reviewing several offers, the Debtor has entered into a Purchase and Sale Agreement with JBN Realty Investment Inc. for the cash purchase price of either (i) Three Hundred Five Thousand Dollars ($305,000) if the Property is vacant and free of Tenants on the closing date, or (ii) Two Hundred Seventy-Five Thousand Dollars ($275,000) if a tenant remains in the Property on the closing date. A copy of the Purchase and Sale Agreement is attached hereto as **Exhibit A** (the "Agreement"). Closing under the Agreement is scheduled to take place within five (5) days after the entry of an order approving this Motion. The Purchaser has paid a deposit of $27,500, which is being held by

counsel for the Debtor subject to the terms of the Agreement, and the balance of the purchase price is due in cash at closing.

9. The Debtor believes that the purchase prices stated in the Agreement are the highest and best offers it can obtain for the Property, respectively if empty and if occupied, and that the sale is in the best interest of the estate and its creditors. A&G will continue marketing the Property pending approval of this Motion by the Court.

10. The Property is the sole substantial asset in the Debtor's estate. As noted above, the leases on the Property are expired and have been rejected. Neither of the tenants in the property has paid any rent to the Debtor since this case was filed and, accordingly, the Debtor is unable to pay the valid, non-insider, third party mortgage on the property on an ongoing basis. Additionally, the holder of the valid mortgage has advised the Debtor that absent a sale, it intends to seek relief from the stay to conduct a foreclosure on the Property, which the Debtor anticipates would result in a complete loss of value of equity to the Debtor. Accordingly, it is imperative that the Debtor liquidate the property as soon as possible at the highest value to the estate. Both purchase prices will result in a significant return to the estate after payment of the valid, non-insider first mortgage on the Property.

## ASSERTED LIENS AGAINST THE PROPERTY

11. Wilmington Trust, NA, Successor Trustee to CitiBank, NA, Trustee in Trust for Registered Holders of Bear Stearns Asset Backed Securities 2007-SD3, Asset Backed Certificates, Series 2007-SD3 ("Wilmington") purports to hold the first deed of trust on the property with a current balance due of approximately $130,000.

12.     James E. Abell (debtor Vincent Abell's father) purports to hold a deed of trust on the Property in the amount of $50,000, on account of a purported loan to the Debtor. This claim/lien is in bona fide dispute because, among other things, the underlying loan, if any, is a sham loan and/or a fraudulent conveyance not made with any corresponding value to the Debtor. The loan, if actually made, was designed by Vincent Abell to obtain funds to pay his personal bankruptcy counsel, and was merely run through the Debtor as an artifice to preclude his creditors from knowing about it. This matter was not properly disclosed by Vincent Abell in his personal bankruptcy. These claims have been scheduled by the Debtor as contingent, disputed and unliquidated. The purported holder has not filed proofs of claim in the bankruptcy case.

13.     Vincent Abell and Marta Bertola (Vincent's estranged wife) purport to hold two (2) deeds of trust against the Property in the amounts of $15,000 and $20,000. These claims/liens are in bona fide dispute because, among other things, the underlying loans, if any, are sham loans and/or fraudulent conveyances not made with any corresponding value to the Debtor. These claims have been scheduled by the Debtor as contingent, disputed and unliquidated. The purported holders have not filed proofs of claim in the bankruptcy case.

14.     Delphine Jones and Jacqueline King, two of the three purported tenants of the basement of the Property, whose lease – to the extent it existed at all – has been rejected by order of this Court, filed a Notice of Lis Pendens against the Property on March 11, 2015. Aside from the substantive infirmities of such notice, the Notice was filed in intentional violation of the automatic stay and is null and void.

**RELIEF REQUESTED**

15. By this Sale Motion, the Debtor seeks entry of an order: (i) authorizing the Sale of the Property free and clear of all liens, claims, encumbrances, and interests (the "Interests") pursuant to the Agreement, and (ii) granting related relief. The sale shall be without representations or warranties of any kind, nature, or description by the Debtor, its agents, or its representatives. The Property shall be transferred "as is" and "where is."

16. The sale shall be subject to any existing rights of any tenant(s) residing in the Property and the Property shall be transferred subject to any such rights. The Debtor makes no representations respecting whether the tenants have any rights to remain in the Property. Subject only to the rights of tenants, if any, all of the Debtor's right, title, and interest in and to the Property shall be assigned and sold pursuant to § 363(f) of the Bankruptcy Code free and clear of all liens, claims, encumbrances and interests (collectively, "Interests"), which shall attach to the net proceeds received by the Debtor as a result of the sale with the same nature, extent, validity and priority as of the Petition Date, subject to further order of the Bankruptcy Court. All sales, transfer and recording taxes, stamp taxes or similar taxes, if any, relating to the sale shall be the sole responsibility of the purchaser and shall be paid at the closing.

17. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a trustee, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). This provision does not explicitly set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets prior to confirmation of a plan. However, courts have required that the decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the trustee.

*See* 3 COLLIER ON BANKRUPTCY ¶ 363.02[4] (16th ed. 2013); *In re Modanlo*, 412 B.R. 715, 732 (Bankr. D. Md. 2006) *subsequently aff'd*, 266 F. App'x 272 (4th Cir. 2008); *In re Fischer*, 03-13704, 2010 WL 2746329, at *10 (Bankr. D. Md. July 9, 2010); *Fulton State Bank v. Schipper (In re Schipper)*, 933 F.2d 513, 515 (7th Cir. 1991) (requiring "articulated business justification" for sale, adequate notice, and the availability of a hearing to approve sale under § 363(b)); *see also Myers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996).

18. The Debtor submits that the decision to proceed with the sale to the Purchaser is based upon sound business judgment and should be approved. A trustee's showing of a sound business purpose need not be unduly exhaustive but, rather, a trustee is "simply required to justify the proposed disposition with sound business reasons." *In re Baldwin United Corp.*, 43 B.R. 888, 906 (Bankr. S.D. Ohio 1984).

19. Section 105(a) of the Bankruptcy Code provides a bankruptcy court with broad powers to administer a case under the Bankruptcy Code. Section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Provided that a bankruptcy court does not employ its equitable powers in a manner that is divorced from the other provisions of the Bankruptcy Code or to issue orders outside the scope of title 11, the exercise of § 105(a) power is appropriate. *See Sindram v. U.S. Marshals Serv. (In re Sindram)*, 08-00559, 2010 WL 1611104, at *3 n.5 (Bankr. D.D.C. Apr. 20, 2010).

20. Pursuant to § 105(a), a court may fashion an order or decree that helps preserve or protect the value of a debtor's assets. *See, e.g., Chinichian v. Campolongo (In re Chinichian)*, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion

orders as necessary pursuant to the purposes of the Bankruptcy Code."); *In re Final Analysis, Inc.*, 389 B.R. 449, 462 (Bankr. D. Md. 2008) ("Section 105(a) bestows broad equitable powers to enter any order or otherwise take action to curb abuses of the bankruptcy process and to preserve the integrity of the Bankruptcy Court.").

21. The Debtor submits that ample business justification exists to sell the Property. The prompt sale of the Property presents the best opportunity to maximize its value for the Debtor's estate. The Debtor's Court approved real estate expert has actively marketed the Property and will continue to do so pending an order of the Court approving the sale. The Debtor has articulated ample business justification for the Sale and, through the measures and safeguards proposed herein, has guaranteed adequate notice to all creditors, and the availability of a hearing on the Sale.

### B. The Proposed Sale Satisfies § 363(f) of the Code

22. Section 363(f) of the Bankruptcy Code authorizes a trustee to sell property of the estate outside the ordinary course of business free and clear of "any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

(i) applicable nonbankruptcy law permits sale of such property free and clear of such interest;

(ii) such entity consents;

(iii) such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

(iv) such interest is in bona fide dispute; or

(v) such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

*See* 11 U.S.C. § 363(f); *In re Collins*, 180 B.R. 447, 450 (Bankr. E.D. Va. 1995) ("Section 363(f)

is phrased in the disjunctive, such that only *one* of the enumerated conditions must be met in order for the Court to approve the proposed sale."); *In re Byrd*, 04-35620-TJC, 2007 WL 1485441, at *14 (Bankr. D. Md. May 18, 2007) *aff'd sub nom. Byrd v. Hoffman*, 417 B.R. 320 (D. Md. 2008) *aff'd sub nom. In re Byrd*, 331 F. App'x 212 (4th Cir. 2009).

23. Certain Interests are asserted against the Property as described above. The Debtor proposes to sell the Property free and clear of these and any other Interests pursuant to § 363(f), with such Interests to transfer and attach to the net proceeds of the Sale with the same validity, priority, extent, and effect that such Interests had immediately prior to Closing. As discussed herein and reflected in the Agreement, the Property will be sold subject to any rights of any existing lawful tenants. The sale free and clear of the King/Jones purported lis pendens is allowed because the lis pendens is null and void having been filed in violation of the automatic stay, and the parties who filed it have no right as purported (or real) tenants to assert a lis pendens.

24. At the Sale Hearing, the Debtor will demonstrate that one or more of the disjunctive elements of § 363(f) has been met, such that the Sale should be approved free and clear of all Interests. Among other things, the sale free and clear of the Wilmington Interest is allowed because such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property, Wilmington will consent and/or Wilmington could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest. The sale free and clear of the James Abell, Vincent Abell and Marta Bertola Interests is allowed because such Interests are, among other things, in bona fide dispute.

### C.     Purchaser is Entitled to the Protections of § 363(m).

25.     Section 363(m) of the Bankruptcy Code provides for certain protections to be provided to good faith purchasers of assets from debtors pursuant to § 363(b).  Section 363(m) states:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

26.     Thus, where the purchase of assets is in good faith, § 363(m) protects parties from the consequences of the reversal or modification of an authorization of sale. While the Bankruptcy Code does not define "good faith", the Fourth Circuit has held that a good faith purchaser is "one who purchases the assets for value, in good faith, and without notice of adverse claims." *Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1197 (7th Cir. 1978)).  To constitute lack of good faith, a purchaser's conduct in connection with the sale must usually amount to "fraud, collusion between the purchaser and other bidders or the trustee or an attempt to take grossly unfair advantage of other bidders." *Id.* at 1024 (citing *In re Rock Indus.*, 572 F.2d at 1198); *In re Xact Telesolutions, Inc.*, CIV.A. DKC 2005-1230, 2006 WL 66665, at *5 (D. Md. Jan. 10, 2006).  Due to the absence of a bright line test for good faith, the determination is based on the facts of each case, concentrating on the "integrity of [an actor's] conduct during the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671, 673 (E.D.N.Y. 1986) (quoting *In re Rock Indus.*, 572 F.2d at 1198).

27.     The Debtor requests that the Court find at the Sale Hearing that the Purchaser is entitled to the protections of a good faith purchaser under § 363(m) because, among other things, the

Debtor's sale and marketing process bears the hallmarks of an arm's-length sale and the Purchaser should be afforded the protections of a good faith purchaser. There is no evidence of fraud or collusion, the Purchaser is not an insider of the Debtor, as that term is defined in § 101(31) of the Bankruptcy Code, and all negotiations have been and will continue to be conducted on an arm's-length, good faith basis.

### D.      Waiver of Stays Imposed by Bankruptcy Rules 6004(h) and 6006(d).

28.      The Debtor requests that the Sale Order be made effective immediately by providing that the stays under Bankruptcy Rules 6004(h) and 6006(d) are waived and inapplicable with respect to the sale of the Property. The sale process here has been fair and closing is to take place shortly following approval of the Sale.

29.      Although Bankruptcy Rules 6004(h) and 6006(d) and the Advisory Committee Notes are silent as to when a court should order otherwise and eliminate or reduce the fourteen (14) day stay period, *Collier on Bankruptcy* suggests that the fourteen (14) day stay period should be eliminated to allow a sale or other transaction to close immediately "where there has been no objection to the procedure." 10 COLLIER ON BANKRUPTCY ¶ 6004.11, 6006.4 (16th ed. 2013). Waiver of these stays will allow the Sale Order approving this Sale Motion to become effective immediately upon entry on the Court's docket so the Debtor can promptly complete the sale process outlined in the Bidding Procedures.

### NOTICE

30.      Notice of this Motion will be given to the parties asserting Interests against the Property and all other parties entitled to notice under the Bankruptcy Code and Rules.

31. The Property is physically situated in the District of Columbia. The District of Columbia's Rental Housing Conversion and Sale Act (the "Sale Act") provides a tenant with, *inter alia*, the "opportunity to purchase [a housing accommodation][1]" as well as certain notification rights before the owner may sell the accommodation. D.C. Code § 42-3404.02(a). By statutory exemption, a sale of a property through a "bankruptcy sale" does not qualify as a "sale" within the meaning of the Sale Act. *See id.* § 42-3404.02(c)(2)(E). Further, an owner of a property to be sold through a "bankruptcy sale" is not required to provide a tenant with written notice of the bankruptcy sale (*i.e.*, "Notice of Transfer") so long as the owner files a Notice of Transfer with the Mayor. *Id.* § 42-3404.02(d)(1)(B). The Notice of Transfer is to be filed with the Mayor or designated District of Columbia government body "at least 90 days prior to the proposed date of transfer." *Id.* § 42-3404.02(d)(2).

32. Because the Property is sought to be sold by the Debtor pursuant to, *inter alia*, § 363 of the Bankruptcy Code, the disposition of the Property requested in the Sale Motion is a "bankruptcy sale" within the meaning of § 42-3404.02(c)(2)(E) of the D.C. Code. As a result, the Debtor has no obligation under the Sale Act to provide notice to any tenant (though it has done so).

33. In an abundance of caution (though the Debtor does not believe it is otherwise required), the Debtor has, under D.C. Code § 42-3404.02(d)(1)(B) and applicable regulations, served a Notice of Transfer of the Property on the D.C. Department of Housing and Community Development, Rental Conversion and Sale Division, in the form prescribed by the District of Columbia by commercial overnight courier with proof of delivery. A copy of the Notice of Transfer

---

[1] "Housing accommodation" means "a structure in the District of Columbia containing 1 or more rental units and the appurtenant land." D.C. Code § 42-3401.03(11).

is attached hereto as **Exhibit B**.  The Debtor may seek, at the Sale Hearing, to request the Court to reduce the ninety (90) day notice period otherwise required by the Sale Act on grounds of federal preemption.  *See Md. Consumer Prot. Div. v. Evans Distrib. & Jewelers, Inc. (In re Evans Distrib. & Jewelers, Inc.)*, No. DKC 95-2640 (D. Md. Oct. 3, 1996), attached hereto as **Exhibit C**.

## PAYMENT OF BROKER COMMISSION

34.     Additionally, the Debtor requests that the Court approve its payment of A&G's commission from the proceeds of sale at the closing on the Property, with such payment being consistent with the Court's order approving A&G's employment.

WHEREFORE, for the foregoing reasons, 133 Chesapeake St. LLC, respectfully requests the following relief:

A.     That the Debtor be authorized to sell all its right, title and interest in the Property to JBN Realty Investment Inc. free and clear of liens, claims, encumbrances and interests;

B.     That the Debtor, be authorized to pay A&G Realty Partners, LLC's commission from the proceeds of sale at the settlement on the Property; and

C.     That the Debtor be granted such other and further relief as is just and equitable.

Dated:  March 26, 2015                              /s/ Richard M. Goldberg
                                                    Richard M. Goldberg, Bar No. 07994
                                                    rmg@shapirosher.com
                                                    Shapiro Sher Guinot & Sandler
                                                    250 W. Pratt Street, Suite 2000
                                                    Baltimore, MD 21201
                                                    410-385-0202

                                                    *Attorneys* for *133 Chesapeake St., LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 26th day of March, 2015, copies of the foregoing were served on the parties listed on the attached service list by first-class mail and, if said parties are registered CM/ECF participants and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party, by electronic transmission.

/s/ Richard M. Goldberg
Richard M. Goldberg